In the Matter of the Assignment of WILLIAM DRYER to JOHN D. WEINHOLZ for the Benefit of Creditors.

[SPECIAL TERM.]

(Decided June 30th, 1878.)

Until there has been an accounting by an assignee for the benefit of creditors, the assignee and the sureties on his bond will not be discharged, even *pro tanto*, from liability as to creditors who have executed a general release upon a composition with the assignor.

To entitle the assignee to a discharge upon a final accounting before a referee, it must be shown before the referee that the assignee duly advertised for claims, and that citations to creditors and parties interested in the fund were duly issued and served ; and it should appear, by evidence other than the original schedule, who are the creditors of the insolvent, and whether they all signed the composition. The original composition agreement and the original release should be returned with the report of the referee ; and the testimony must be in writing, subscribed by the witnesses, and returned with the report.

APPLICATION by an assignee under a general assignment for the benefit of creditors for the discharge of himself and the sureties on his bond from liability to creditors who had executed a general release.

After the assignment, the creditors of the assignors, by a composition agreement duly executed, agreed to accept a sum equal to twenty-five per cent. of their claims in full satisfaction thereof, and subsequently, upon payment of the composition, a general release was also duly executed by the creditors. The assignee was the subscribing witness to both the composition agreement and the release, and both were proved by him before a notary public, whose certificate of such proof

was annexed. Thereafter, upon application of the assignee, a citation to the creditors to attend his final accounting was issued and served ; and pending the accounting, this application was made by the assignee for the release of himself and his sureties from any further liability in respect of the claims of any creditors whose names appeared upon the general release.

Van Hoesen, J.—There can be no discharge without an accounting. Experience has shown the absolute necessity for the giving, by the assignee, of an account of his stewardship. I have now before me a case apparently like this, in which an assignor joined with the assignee in petitioning for the discharge of the assignee's sureties, and where after such discharge the assignee retained and refused to surrender to the assignor the surplus remaining in his hands.

I will not sign any order for a discharge *pro tanto*. Let the assignee make his account show that his duty has been done, and that nothing remains to be done, and then, upon turning over to the assignor the balance in his hands, a discharge will be granted.

Application denied.

A subsequent application for the discharge of the assignee upon his final accounting was made (at Special Term, July, 1878), upon which the following opinion was rendered.

Van Hoesen, J.—There are three classes of persons barred by the discharge of the assignee: First, creditors who have appeared ; secondly, creditors who have been duly cited but have failed to appear; and thirdly, those who, after due advertisement, have not presented their claims (Assignment Act of 1877, § 20, subd. 5). It must appear on the accounting before the referee that the assignee duly advertised for claims (§ 4). It was not the intention of the legislature that the assignee should administer the estate without notice to the creditors. It must also appear that citations have been issued to creditors and parties interested in the fund (§§ 11, 12, 13) ;

there must be proof that the citation has been duly served; and it is of course essential that the referee should know who the creditors are, for without such knowledge he cannot tell whether they have all been cited. The original schedule is not satisfactory evidence of this. The books of the assignor, the assignor himself, and the witnesses, may be examined to ascertain the names and addresses of the creditors. The referee should have taken testimony to ascertain whether there are any creditors who have not signed the composition. Again, there must be some authority given by the court to warrant the withdrawal by the assignee of the original papers, and for the substitution of copies in their stead. In this case, the assignee is the sole witness to the signatures of the creditors to the composition agreement and to the release. He goes before a notary public by himself, proves as subscribing witness the signatures of the creditors and the genuineness of the signatures, and then, without any other evidence than the certificate of the notary that he (the assignee) has sworn to them, he asks that his bond be discharged. It will be seen that the whole matter and the interest of the creditors hang on the mere word of a single person, and that person the assignee, who asks that his bond be cancelled and that he be released. He then offers what purports to be, and what probably is, a copy of the notary public's certificate, and proposes to leave that, together with a copy of the other papers, instead of the original, on the files of the court. This is too unsafe a method of doing business. The matter must be referred back to the referee to ascertain, by the examination of witnesses, who are creditors of the insolvent, and whether they have all signed the composition, whether there was any advertisement for claims, and whether the creditors were duly cited. The original composition agreement and the original release must be returned with the report of the referee. The testimony must be in writing, subscribed by the witnesses, and returned with the report (Gen. Rules, r. 30).

Report referred back.